UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA TAPIA, | |
| Plaintiff, | No. 19 C 1257 |
| v. | Judge Thomas M. Durkin |
| CITY OF CHICAGO, a municipal corporation, and LT. PAUL MACK and SGT. EDUARDO BELTRAN, in their individual capacities, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Officer Melissa Tapia brings this action against the City of Chicago, Sergeant Eduardo Beltran, and Lieutenant Paul Mack for sex discrimination in connection with her training in the Chicago Police Department Special Function Division's Marine Unit. The defendants filed a motion to dismiss all claims. For the following reasons, the defendants' motion is denied.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed

1

factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Officer Melissa Tapia has been a member of the Chicago Police Department since 2002. R. 30 ¶ 27. From 2004 until 2018, Tapia worked in the Juvenile Intervention Center and the Missing Persons Unit. *Id.* ¶ 28. In 2009 and in 2014, Tapia unsuccessfully applied to join the Marine Unit, one of the four units of the CPD's Special Functions Division (the other three units include the Helicopter Unit, the Bomb Squad, and SWAT). *Id.* ¶¶ 6-8. In June 2018, Tapia was selected from a promotions list to begin training with the Marine Unit. *Id.* ¶ 31. Tapia is an experienced diver and has several certifications, including as a rescue diver. *Id.* ¶ 30.

During Tapia's training, Lieutenant Paul Mack served as the acting commanding officer and officer Eduardo Beltran led the training class. *Id.* ¶ 13. The class included 15 officers, 13 men and two women, very few of whom had dive

2

training. *Id.* ¶ 33. Five candidates dropped out of training in the first few weeks. *Id.* ¶ 36. During the fourth week, Beltran administered a mandatory swim test that required trainees to pull themselves out of deep water onto a pool deck (known as the "pool exit test"). *Id.* ¶ 37. Tapia could not pull herself out of the water. *Id.* After the failed test, Beltran ridiculed Tapia in front of Mack and several other officers, accusing her of being weak and needing to do pushups. *Id.* ¶ 38. Beltran gave Tapia one week to pass the test, which was required to receive an interview for the Unit. *Id.* ¶¶ 37, 38.

Tapia completed the pool exit test the following week, but Beltran and Mack determined she did not exit quickly enough. *Id.* ¶ 39. Mack told Tapia: "That looked like shit, I should send you back. You should have more strength. Why are you so weak?" *Id.* ¶ 39. Tapia again completed the pool exit test the following week, at which time Beltran stopped conducting the test for all trainees. *Id.* ¶ 40. Nevertheless, Beltran required Tapia, and no one else, to perform the test throughout the training. *Id.* ¶ 41. Meanwhile, Beltran permitted a male trainee to complete the lifeguard portion of the training even though he could not perform the required 600-meter swim or pick up a brick from the bottom of the pool. *Id.* ¶ 55.

Tapia alleges that Beltran routinely singled her out and humiliated her in front of the class. Specifically, Beltran berated Tapia for minor mistakes but did not do the same to male trainees; blamed Tapia for the male officers' mistakes; required Tapia and the other female trainee (but not the male trainees) to clean, set up, and

3

keep track of his dive equipment; and yelled at the female trainees for asking questions or seeking clarification. *Id.* ¶¶ 43, 44, 52, 53.

Tapia alleges her experience is an example of the CPD Special Function Division's customarily hostile treatment of women. In addition to being singled out, humiliated, and held to a different standard than the male trainees, Tapia contends the Marine Unit officers would routinely ogle women in swimsuits and take photographs of them on the beach. *Id.* ¶ 56. Tapia also alleges the CPD provided her with defective equipment and inadequate training facilities. Specifically, the facility where the trainees swam had only one women's changing room, which the male trainees used for bowel movements, causing Tapia and the other female trainee to be late for training sessions. *Id.* ¶ 46. The CPD also did not provide appropriately sized dry suits for women, forcing Tapia and the other female trainee to either share a suit or wear suits that were too large. *Id.* ¶¶ 48-49. Finally, the Marine Unit boats did not have bathrooms or separate changing areas, creating problems for Tapia during her menstrual period and requiring her and the other female trainee to go hours without relieving themselves. *Id.* ¶¶ 57-58.

In December 2018, Mack informed the nine remaining trainees that he would invite them all to join the Marine Unit pending an ice dive. *Id.* ¶ 60. Tapia could not complete the dive on her first two tries because of her large and leaking dry suit. *Id.* ¶¶ 61, 63. Tapia failed the test two more times before she eventually completed the dive. *Id.* ¶¶ 64-67. While many of the trainees struggled to pass the ice dive test, Beltran made only Tapia write memos about her mistakes. *Id.* ¶ 68.

In January 2019, Beltran invented an *ad hoc* test that required the trainees to pull themselves out of the training pool in their dry suits. *Id.* ¶ 71. Tapia's oversized dry suit filled with water rendering her unable to complete the test. *Id.* ¶ 70.

Three weeks later, Beltran terminated Tapia's detail in the Marine Unit, citing concerns over her ice dive in December. *Id.* ¶ 74. On the same day, Mack told Tapia she had been terminated because of her trouble removing herself from the water. *Id.* ¶ 75. Tapia responded that she never had trouble getting onto boats, but Mack told her the issue was the pool. *Id.* Tapia returned to her previously assigned unit the following Monday. *Id.* ¶ 77.

Tapia brings this action for sex-based discrimination in violation of 42 U.S.C. § 1893 and equal protection (Count I against the City of Chicago and Count II against Beltran and Mack), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) (Counts IV and V against the City of Chicago), and the Illinois Civil Rights Act, 740 ILCS 23/5 (Count III against the City of Chicago). The defendants now move to dismiss Tapia's complaint.

**Analysis**

I.    Section 1983 Equal Protection Claims (Counts I and II)

A Section 1983 claim requires a plaintiff to establish that (1) "the conduct complained of was committed by a person acting under color of state law"; and (2) that "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution of the United States." *Moore v. Muncie Police & Fire Merit Comm'n*, 312 F.3d 322, 326 (7th Cir. 2002) (quoting *Townsend v. Vallas*, 256 F.3d 661, 669 (7th

5

Cir. 2001)). To prevail on an equal protection claim under Section 1983, the plaintiff must establish not only that the defendants' actions had a "discriminatory effect," but also that the defendant was "motivated by a discriminatory purpose." *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). To prove discriminatory effect, the plaintiff must show that (1) she was a member of a protected class; (2) she is otherwise similarly situated to members of the unprotected class, and (3) she was treated differently from members of the unprotected class. *Chavez v. Illinois State Police*, 251 F.3d 612, 636 (7th Cir. 2001).

a) Protected Property Interest

Defendants advance two arguments for dismissing Tapia's equal protection claims. First, defendants argue Tapia did not have a protected property interest in her prospective promotion to the Marine Unit. But the defendants confuse Tapia's equal protection claim with a due process claim. Unlike due process claims, plaintiffs need not have a property interest at issue to allege an equal protection violation. Tellingly, the defendants cite only cases dealing with due process, not equal protection. *See, e.g., Moore*, 312 F.3d at 323 (7th Cir. 2002) (alleged violation of the plaintiff's due process rights); *United States. v. Chicago*, 869 F.2d 1033, 1035 (7th Cir. 1989) (due process claims); *Bigby v. Chicago*, 766 F.2d 1053, 1055 (7th Cir. 1985) (same).[1] As such, their argument fails.

---

[1] Defendants cite one case in which the court held a plaintiff must establish a protected property interest to bring a due process or equal protection claim. *Word v. Chicago*, 2019 WL 296571, at *2 (N.D. Ill. Jan. 23, 2019). But in that case, the plaintiff brought only one claim under Section 1983 alleging both due process and equal

6

b)  Discrimination

The defendants next argue that Tapia failed to allege the City's conduct had a discriminatory effect and was motivated by a discriminatory purpose. But defendants' argument amounts to an attempt to make Tapia prove a prima facie case of discrimination, a burden that is not required at the pleadings stage. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (a plaintiff "is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination" under Title VII to survive a motion to dismiss); *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) ("Again, we note the liberal requirements of notice pleading under Rule 8, particularly with regard to Equal Protection claims."). It is enough for her to identify the type of discrimination she thinks occurred (sex), by whom (Beltran, Mack, and the City of Chicago), and when (before and during her Marine Unit training). *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). "That is all that she need put in the complaint." *Id.* In *Bond v. Atkinson*, 728 F.3d 690 (7th Cir. 2013), on which the defendants rely, the court dismissed the plaintiff's equal protection claim because she did not allege that the policy at issue was intended to discriminate against women. In contrast, Tapia explicitly alleges that she was dismissed from the Marine Unit because of her sex. Thus, the defendants' argument is unavailing.

c)  Personal Involvement

---

protection violations, and in reaching its conclusion, the court cited a case dealing only with a due process claim. *Id.* at *2.

Defendants also argue that Tapia did not allege Beltran and Mack personally acted to deprive her of her equal protection rights. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

This argument borders on disingenuous as it relates to Beltran. Tapia alleges in detail the ways in which Beltran treated her worse than male trainees, including blaming her for male officers' mistakes, belittling her (but not male trainees) for errors, forcing her and the other female trainee (but not the men) to clean his equipment, and otherwise contributing to an environment that was hostile towards women. This is easily sufficient to plausibly allege Beltran's personal involvement.

Tapia's allegations against Mack also pass 12(b)(6) muster. To be sure, Tapia alleges less against Mack than she does against Beltran. Nevertheless, she specifically states that Mack and Beltran terminated her detail to the Marine Unit because of her sex. R.30 ¶ 15. Tapia then supports this claim by pointing to the conflicting reasons Beltran and Mack provided for her termination. *Id.* ¶¶ 74, 75. While it is unclear from the complaint whether Mack or Beltran had final authority over Tapia's dismissal, Mack was the acting commanding officer and thus it is reasonable to assume it was ultimately his decision. She also describes that Mack was, at the very least, complicit in Beltran's abuse. *Id.* ¶¶ 39, 63, 66. Drawing all reasonable inferences in Tapia's favor, that is enough to allege Mack's personal involvement. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1085-86 (7th Cir. 2008)

8

(denying defendants' motion to dismiss Section 1983 sex discrimination claim for similarly detailed allegations of personal involvement).

d) Qualified Immunity

Defendants contend that they are entitled to qualified immunity even if Tapia plausibly stated a claim against them. "Qualified immunity shields government officials from liability under Section 1983 'for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gruenberg v. Gempeler*, 697 F.3d 573, 578 (7th Cir. 2012) (quoting *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1022 (7th Cir. 2000)). In deciding whether a right is clearly established, courts ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015).

Defendants argue Tapia cannot show they violated a clearly established right because she did not have a property interest in her prospective promotion. R. 36 at 11. As previously discussed, Tapia does not need a protected property interest to bring an equal protection claim. Moreover, "the right to be free from sex discrimination is clearly established." *Tamayo*, 526 F.3d at 1090. As such, the defendants' argument fails and their motion to dismiss Count II is denied.

e) *Monell* Claim

The defendants also contend that Tapia failed to state a *Monell* claim against the City of Chicago because she failed to describe what policy or custom led to her

9

dismissal from the Marine Unit. A local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Social Services of the City of N.Y.*, 436 U.S. 658, 694. But a local government may be liable if the unconstitutional act complained of is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a government practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). At the pleading stage, a plaintiff must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

This Court recently denied the City of Chicago's motion to dismiss *Monell* claims in two similar cases alleging sex discrimination in the CPD's Special Functions Division. *See Schloss v. City of Chicago* and *Bresnahan v. City of Chicago*, 2018 WL 4829597 (N.D. Ill. Oct. 4, 2018). Defendants argue that this case warrants a different result because Tapia complains of different policies effectuated by different supervisors. Specifically, they contend that Tapia was dismissed during training, whereas Bresnahan was not chosen for promotion in the first place and Schloss was demoted. But as in *Schloss* and *Bresnahan*, the gravamen of Tapia's *Monell* claim is that there exists a custom and practice of sex discrimination against women applying for or employed in the Special Functions Division. That Schloss and Bresnahan were dismissed or removed at different points (and by potentially different supervisors)

only lends support to a plausible claim that a widespread practice exists. *See Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018) ("In determining whether a plaintiff has sufficiently pled a widespread practice in a *Monell* claim, the Court looks to the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom.").

Far from "boilerplate allegations," as the defendants contend, Tapia points to specific discriminatory practices used to exclude women, including: conducting subjective, non-blinded interviews; requiring invalid physical testing; providing ill-fitting (or nonexistent) training gear for women; making final promotion decisions based almost entirely on subjective criteria; and failing to implement corrective measures to reduce gender bias in the selection process despite being aware of alternative procedures. Tapia then describes how those practices have negatively affected women generally, providing statistics on the low number of women employed in Special Functions and the Marine Unit, and pointing to specific examples of other qualified women who were denied promotion or demoted (Schloss and Bresnahan). Lastly, Tapia alleges how her own experience and dismissal were in line with the Special Functions Division's widespread practice of denying women employment opportunities based on their sex. The combination of Tapia's statistical analyses, allegations of discriminatory practices, and description of her own experience is enough to plausibly allege a *Monell* claim against the City for a widespread practice

of discriminating against women in the Special Functions Division. Defendants' motion to dismiss Count I is denied.

II. Title VII Claims (Counts IV and V against the City of Chicago)

a) Exhaustion

The defendants first contend that Tapia's Title VII claims should be dismissed because she failed to attach documentation to her complaint establishing that she exhausted her administrative remedies. R. 36 at 16, n.4 (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge.")). But although "Title VII requires that a claimant be notified of her right-to-sue before filing a complaint, it does not state any requirement that a plaintiff attach the right-to-sue letter to her complaint." *Krause v. Turnberry Country Club*, 571 F. Supp. 2d 851, 859 (N.D. Ill. 2008) (quoting *Raymond v. City of Chicago*, 183 F. Supp. 2d 1060, 1066 n.3 (N.D. Ill. 2002)); *see also Frazier v. Harris*, 266 F. Supp. 2d 853, 874 (C.D. Ill. 2003) ("A party is not required to attach documents such as the charge of discrimination; she needs only to plead generally that she has complied with EEOC procedures."). Here, Tapia pleaded that she filed a charge of sex discrimination with the EEOC, and that she commenced this lawsuit within 90 days of receiving her Notice of Right to Sue (right-to-sue letter). *See* R. 30 ¶ 22.

Nevertheless, defendants correctly note that it is general practice for parties to attach a right-to-sue letter to their complaints. Not only did Tapia not attach a letter, but she completely ignored the defendants' argument that her Title VII claims

should be dismissed for failing to attach documentation from an underlying administrative proceeding in her opposition to their motion. Rather than allowing this to remain an open question, Tapia should provide her EEOC right-to-sue letter to the Court and opposing counsel within 14 days of the issuance of this order. In the meantime, however, defendants' motion to dismiss Counts IV and V for failure to exhaust is denied.

b) Failure to Promote (Count IV)

The defendants next argue that Tapia failed to state a claim for failure to promote. As an initial matter, the Court agrees with the defendants that it is not entirely clear from the complaint under which Title VII theory Tapia is proceeding. Nevertheless, Tapia argues in her opposition to the defendants' motion to dismiss that Count IV states an adverse treatment claim for failure to promote. The Court thus analyzes Count IV as such here.

An employer's decision not to promote an employee is discriminatory when the employee establishes that "(1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016). To survive a motion to dismiss, however, "an employment discrimination plaintiff need not plead a prima facie case of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). Rather, "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action

13

against the plaintiff on the basis of her sex." *Tamayo*, 526 F.3d at 1084; *see also Swanson*, 614 F.3d at 404 (7th Cir. 2010) ("A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else."). Tapia alleges that she was qualified for promotion to the Marine Unit, and later terminated based on her sex. She also alleges that Mack told the remaining trainees he would invite them all to the join the Marine Unit, creating the plausible inference that at least some of them were promoted over Tapia. Tapia has thus stated a claim for failure to promote.

Defendants contend that Tapia effectively pleaded herself out of court by including facts in her complaint that establish she repeatedly failed tests and was unqualified for the position. But a party only pleads itself out of court "by pleading facts that establish an *impenetrable* defense to its claims." *Tamayo*, 526 F.3d at 1086 (emphasis added). To be sure, some of Tapia's allegations suggest an alternative explanation for the defendants' actions; namely, that Tapia struggled with some of the physical tests (temporarily putting aside the allegation that Beltran invented at least one of those tests to prevent her from joining the unit). But that alternative explanation and sex discrimination are not mutually exclusive. *See id.* ("To succeed in a Title VII discrimination action, an employee need not show that her sex was the *exclusive* reason for her employer's actions. She must prove only that sex was a *motivating* factor."). As such, Tapia still plausibly alleges a claim for relief. Defendants' motion to dismiss Count IV is denied.

c) Hostile Work Environment (Count V)

Defendants also move to dismiss Tapia's claim for a hostile work environment. To state a Title VII hostile work environment claim, a plaintiff must allege "(1) she was subject to unwelcome harassment; (2) the harassment was based on her national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-34 (7th Cir. 2015). To rise to the level of "hostile," conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an abusive relationship. *Id.* at 834.

Defendants argue that the conduct Tapia alleges – including comments about her physical strength, difficult training conditions, and performance criticisms – does not rise to the level of severe or pervasive. The Court disagrees. Far from being limited to offhand comments and simple teasing, as in the case defendants cite, Tapia alleges she was routinely mocked, forced to perform tasks not required of male trainees, and subjected to a "Boy's Club" atmosphere. And "it is premature at the pleadings stage to conclude just how abusive [Tapia's] work environment was." *Id.* In short, Tapia alleges a story of a hostile environment that "holds together." *Id.* (quoting *Swanson*, 614 F.3d at 404). That is enough to avoid dismissal. Defendants' motion to dismiss Count V is denied.

III. Illinois Civil Rights Act (Count III)

The Illinois Civil Rights Act (ICRA) prohibits, in relevant part, a state or local governmental entity from "discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender." 740 ILCS 23/5(a)(1).

Defendants offer two reasons why the Court should dismiss Tapia's ICRA claim. First, they contend that ICRA does not extend to government employment discrimination. In support of their position, they argue that the "program or activity" language in ICRA does not include public employment. Although defendants fail to cite a case that stands for that proposition, they point this Court to a decision in which the Seventh Circuit interpreted similar language as not applying to public employment in the context of Title II of the ADA. *See Brumfield v. City of Chicago*, 735 F.3d 619, 626 (7th Cir. 2013) (holding that Title II of the ADA does not cover disability-based employment discrimination and noting that "employment is not ordinarily conceptualized as a 'service, program, or activity' of a public entity"). Meanwhile, Tapia cites a case in which the court considered and rejected defendants' exact argument. *See Rao v. Gondi*, 2014 WL 5423441, at *5 (N.D. Ill. Oct. 23, 2014) ("[T]he plain language of the statute is intentionally broad. The Court finds that tenured employment with the University constituted a program or activity under which the ICRA prohibits discrimination . . . ."); *see also Warr-Hightower v. Ill. Cent. Coll.*, 2017 WL 5484671, at * 9 (C.D. Ill. Nov. 15, 2017) (denying motion to dismiss ICRA claim in the context of employment discrimination). Defendants also argue that ICRA exists merely to provide a state remedy that is identical to the federal disparate impact canon, and that it has no logical purpose or application here because the

Illinois Human Rights Act (IHRA), Title VII, and Section 1983 already provide avenues to seek redress for government employment discrimination. In so arguing, defendants cite an unpublished state-court decision in which the court wrote, in dicta, that a claim of individual employment discrimination appears to be properly brought under IHRA (which specifically prohibits unlawful employment discrimination), not ICRA. *See LaRiviere v. Bd. of Trustees of S. Illinois Univ.*, 2015 WL 4537038, at *5 (Ill. App. Ct. July 27, 2015) (unpublished).

Neither party has briefed the issue in enough detail to allow the Court to resolve the matter at this time. Given the related nature of Tapia's claims, allowing her ICRA claim to proceed is unlikely to significantly impact discovery (if at all). The parties may brief the issue in further detail at summary judgment should the case proceed to that stage.

For a similar reason, the Court declines to dismiss Tapia's ICRA claim as duplicative of her Section 1983 claims. Courts have authority to dismiss claims as duplicative where "the parties, claims, facts and requested relief are substantially the same." *Van Vliet v. Cole Taylor Bank*, 2011 WL 148059, at *2 (N.D. Ill. Jan. 18, 2011) (citing *Norfleet v. Stroger*, 297 Fed. App'x. 538, 540 (7th Cir. 2008)). Defendants argue that Tapia's ICRA claim relies on the same facts and legal theory, and seeks the same damages, as her Section 1983 claims. Tapia contends that unlike her Section 1983 claim against the City, she does not need to show a widespread custom of sex discrimination to prevail on her ICRA claim. Tapia however does not offer what she believes she would have to prove to prevail on her ICRA theory. If the claims are

17

in fact duplicative, allowing Tapia's ICRA claim to proceed should not affect discovery. *See Willborn v. Sabbia*, 2011 WL 1900455, at *6 (N.D. Ill. May 19, 2011) (declining to dismiss claims as duplicative and stating that "this action is merely at the pleadings stage and the [plaintiffs] are only required to provide a limited record of facts at this juncture. It can be properly ascertained whether the [claims] are truly duplicative at the summary judgment stage after discovery has been conducted"). Thus, the Court declines to dismiss Count III.

**Conclusion**

For the reasons stated above, the Court denies the defendants' motion to dismiss Tapia's first amended complaint [35]. Plaintiff should submit her EEOC right-to-sue letter to the Court and opposing counsel within 14 days of the issuance of this order.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: August 7, 2019